TALLMAN, Circuit Judge,
dissenting:
This appeal turns on how we interpret the effect of the California Supreme Court’s “grant and hold” order and its subsequent one-sentence order dismissing 112 petitions for review, including Thompson’s motion to recall the remittitur.[1] Because I do not interpret these orders as reopening direct review such that Thompson’s conviction and sentence were “again capable of modification through direct appeal,” Jimenez, 555 U.S. at 120, 129 S.Ct. 681,1 respectfully dissent.
The Supreme Court in Jimenez held that “where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet ‘final’ for purposes of § 2244(d)(1)(A).” 555 U.S. at 121, 129 S.Ct. 681. The Court also reaffirmed that the mere “possibility that a state court may reopen direct review ‘does not render convictions and sentences that are no longer subject to direct review nonfinal.’ ” Id. at 120 n. 4, 129 S.Ct. 681 (quoting Beard v. Banks, 542 U.S. 406, 412, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004)). In Jimenez, the Texas state court had actually granted the petitioner the right to file an out-of-time appeal, which he had filed in the Texas Court of Criminal Appeals. Id. at 116, 129 S.Ct. 681. Upon full review in the appel *1096 late court, his conviction was affirmed. Id. Thompson argues, and the majority erroneously agrees, that — based upon the grant and hold order and the subsequent summary dismissal of review Jimenez controls here, thus resetting the date his conviction became final to December 11, 2007. See Opinion at 1094-95.
Granting and holding Thompson’s motion to recall the remittitur in order to decide whether his direct review should be reopened while the state court of last resort awaited issuance of a United States Supreme Court decision in a related case that could impact multiple petitions, however, only presented the mere “possibility” that direct review would be reopened. Like the petitioner in Jimenez, Thompson requested that the California Supreme Court recall the remittitur (akin to our court recalling the mandate) and reinstate his direct appeal so that he could present new arguments regarding the effect of Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), on his sentence. Unlike the Texas Court of Criminal Appeals (that state’s court of last resort) however, the California Supreme Court did not actually reinstate direct review. Thompson’s motion was not remanded to the California Court of Appeal for decision on the merits and he was not allowed to file a fully briefed out-of-time appeal.[2] Instead, the California Supreme Court determined that neither Cunningham nor People v. Black, 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (2007), entitled him to a recall of the remittitur and reinstatement of his direct appeal.
Furthermore in Randle v. Crawford, 604 F.3d 1047, 1054-57 (9th Cir.2010), in rejecting the argument that Jimenez applied to the Nevada Supreme Court’s denial of an out-of-time appeal as untimely, we held that if the “one-year limitations period were made contingent on the resolution of a petitioner’s attempt to file an untimely notice of appeal, a petitioner could indefinitely delay the commencement of the one-year period by simply waiting to file such notice until after the normal expiration date.” Id. at 1055 (internal quotation marks omitted). Ultimately, the “narrow” holding in Jimenez did not apply because the petitioner merely “sought to restore his direct appeal, and that request was rejected by the Nevada Supreme Court.” Id. at 116, 129 S.Ct. 681. And, “[ajlthough [Petitioner] was entitled to present ... the arguments that he would have presented on direct appeal in his state postconviction relief proceeding, his direct appeal was not, and could not be reinstated.” Id. Thompson similarly requested a second chance in the California Court of Appeal, but the California Supreme Court denied that request after the disposition in Black, 62 Cal.Rptr.3d 569, 161 P.3d 1130. Thus, his direct appeal was never reopened and his sentence remained incapable of modification.
I further part company with my colleagues because I do not interpret the one-sentence summary dismissal of 112 petitions for review as dismissing each petition, and therefore Thompson’s underlying claims, “on the merits” of the arguments he would have made had the California Supreme Court truly reinstated direct review. Nor can we infer from a one-sentence order dismissing all of these petitions that the California Supreme Court itself fully considered the underlying merits of each case.
Indeed, we have been specifically instructed not to infer too much from similar California Supreme Court summary or *1097 ders. See Evans v. Chavis, 546 U.S. 189, 198-99, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006) (reversing the Ninth Circuit’s determination that a California Supreme Court order was on the merits when the order “was silent on the grounds for the court’s decision”); Carey v. Saffold, 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (“Given the variety of reasons why the California Supreme Court may have included the words ‘on the merits,’ those words cannot by themselves indicate that the petition was timely. And the Ninth Circuit’s apparent willingness to take such words as an absolute bellwether risks the tolling of the federal limitations period even when it is highly likely that the prisoner failed to seek timely review in the state appellate courts.”).
The more plausible and likely reading of the one-sentence order is that, in light of the holding in Black, 62 Cal.Rptr.3d 569, 161 P.3d 1130, the California Supreme Court dismissed Thompson’s review because neither the motion to recall the re-mittitur nor the record before the court showed that such extraordinary relief of reopening direct review was warranted. Because Thompson was never entitled to and indeed did not have his direct review reinstated, Jimenez does not apply and the AEDPA clock was not reset, rendering Thompson’s federal habeas petition untimely.[3] I would therefore affirm the district court’s dismissal of Thompson’s untimely petition.

. The order listed 112 case names and numbers followed by the sentence: "In light of People v. Black (2007) 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130, review in the above-entitled matters is dismissed. (Cal. Rules of Court, rule 8.528(b)(1).).”

. Nor does it appear that Thompson’s motion was ever fully briefed before the California Supreme Court, as briefing was deferred on May 23, 2007, and never ordered before the dismissal of his motion on September 12, 2007.

. The majority reaches beyond the record to take judicial notice of orders transferring seventy-five cases to the California Court of Appeal for reconsideration, Opinion at 1095 n. 3, to infer that the California Supreme Court concluded, on the merits, that the 112-dis-missed cases were correctly decided and the 75-others should be reconsidered. I read this to support my position that the question the California Supreme Court confronted was whether reopening of direct review in a closed appeal was warranted and by dismissing Thompson’s petition, the California Supreme Court definitively answered "no.” Consideration of that question only presented the possibility that direct review would be reopened. It would have been a simple matter to timely file a Federal habeas corpus petition and immediately ask the district court to stay and abate action pending resolution of the motion to recall the remittitur. See Rhines v. Weber, 544 U.S. 269, 277-79, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (approving stay and abeyance procedure to allow petitioner to exhaust claims in state court where good cause exists). This Thompson did not do.